STATE EX REL. BOTTOMLY, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 5,761.)

(Submitted June 6, 1925.   Decided June 22, 1925.)

[237 Pac. 525.]

*Writ of Supervisory Control—Criminal Law—Suspended Sentences — Power of District Court — Constitutional Law — Pardoning Power—Appeal.*

Criminal Law—Suspended Sentences—Time for Making Order.
   1.   Under Chapter 21, Laws of 1923 (secs. 12078–12986, Rev. Codes 1921), providing for suspension of sentences in criminal cases, the order of suspension must be made before the defendant is committed to the institution wherein he is to serve his sentence.
Same—District Court Loses Jurisdiction When Appeal Perfected.
   2.   When an appeal is perfected in a criminal cause the district court loses and the supreme court acquires jurisdiction, and therefore pending the appeal the former is without authority to make any order affecting the judgment.
Same—Dismissal of Appeal—District Court Reinvested With Jurisdiction.
   3.   On *remittitur* of a certificate of dismissal of an appeal, the district court is reinvested and the supreme court divested of jurisdiction over the cause.
Same—Suspended Sentences—Purpose of Act.
   4.   The statute providing for the suspension of sentences in criminal actions is designed to afford first offenders an opportunity for reformation and should be liberally construed.
Same—Order Suspending Sentence After Dismissal of Appeal—Jurisdiction.
   5.   Defendant was convicted of a violation of the liquor law and sentenced to serve sixty days in jail and pay a fine. He at once perfected an appeal, secured a certificate of probable cause and was admitted to bail. Five months thereafter his appeal was dismissed and the trial court on the day the certificate of dismissal was received suspended his sentence. *Held,* on application for writ of supervisory control, that defendant never having been committed, the court could properly, after entry of judgment, suspend the sentence at the time it did.

---

   1.   Power of court to revise or amend sentence, see note in 79 Am. Dec. 779.
   Power of court to suspend sentence, see notes in 8 Ann. Cas. 386; 14 Ann. Cas. 722; Ann. Cas. 1912B, 1192. See, also, 8 R. C. L. 247.
   Constitutionality of statutes conferring on court power to suspend sentence, see note in 26 A. L. R. 399.
   Constitutionality of statutes establishing parole system, see note in L. R. A. 1915F, 531. See, also, 8 R. C. L. 248.

Constitution—Contemporaneous Construction by Departments of State Government Entitled to Consideration.

6. Provisions of the Constitution must be construed in the light of conditions as they existed at the time of its adoption, and while the contemporaneous construction of one of its provisions by the other departments of the state government is not conclusive upon the judicial department it is entitled to respectful consideration.

Criminal Law—Suspended Sentences—Constitution—Pardoning Power not Infringed by Act.

7. *Held,* that the suspended sentence law as construed in paragraph 5 to the effect that the district court may order a sentence suspended after entry of judgment does not infringe the pardoning power confided by section 9, Article VII of the Constitution, to the governor with the approval of the board of pardons.

---

Constitutional Law, 12 **C. J.,** sec. 63, p. 710, n. 62; sec. 65, p. 712, n. 73; sec. 395, p. 896, n. 34; sec. 3140, p. 1334, n. 58.

Criminal Law, 16 **C. J.,** sec. 3140, p. 1334, n. 57; p. 1335, n. 61; 17 **C. J.,** sec. 3380, p. 108, n. 46, 47; sec. 3520, p. 197, n. 46.

Original application for writ of supervisory control by the State, on the relation of R. V. Bottomly, against the District Court of the Eighteenth Judicial District in and for the County of Blaine, and Charles A. Rose as judge thereof, to annul an order suspending a jail sentence. Proceeding dismissed.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for Relator, submitted a brief; *Mr. Choate* argued the cause orally.

*Mr. C. A. Spaulding* and *Mr. John G. Brown,* for Respondents, submitted an original and a supplemental brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On December 9, 1924, Sigfred Rasmussen was convicted of unlawfully possessing intoxicating liquor, and on December 13, a judgment was rendered and entered that he be imprisoned in the county jail for sixty days and pay a fine of $200, with the provision added that if the fine be not paid he should be imprisoned for an additional

period equal to one day for every two dollars of the fine. On the same day (December 13) Rasmussen perfected an appeal to this court, secured and filed a certificate of probable cause, and was admitted to bail. On May 14, 1925, upon stipulation of his counsel and the attorney general, the appeal was dismissed; and on May 15, the district court entered an order suspending the jail sentence and placing Rasmussen on probation. This proceeding was then instituted by the county attorney to have the order of suspension annulled.

The only question presented is: Did the district court have jurisdiction on May 15, 1925, to suspend the execution of the jail sentence imposed on December 13, 1924?

The statute which provides for the suspension of the execution of judgments in criminal cases was enacted in 1913 (Chap. 21, Laws 1913), and is now found in sections 12078–12086, Revised Codes of 1921. Section 12078 provides that in all prosecutions for crimes, except the heinous crimes enumerated in the next section, the court may suspend the execution of the sentence and place the defendant on probation in any case where it appears that the defendant has never been imprisoned for crime, that his character and the circumstances of the case are such that he is not likely to engage in an offensive course of conduct again, and that the public safety does not demand or require that he suffer the penalty imposed by the law. Section 12080 provides that the effect of the order of suspension is to place defendant under the control of the state board of prison commissioners, and subject to the rules which govern persons on parole. Section 12082 provides that a copy of the judgment, with a copy of the order of suspension and the reasons therefor, shall be certified to the board of prison commissioners and "to the institution to which said court would have committed the defendant but for the suspension," *etc.*

Independently of other considerations, it is apparent from
[1]  these provisions that it was the intention of the lawmakers
that any order suspending the execution of a sentence
should be made before the defendant is committed to the
institution wherein his term of imprisonment would have
been served but for the order, and to this extent counsel
agree.

It is disclosed by the record that Rasmussen was never
committed to the county jail. The certificate of probable
[2, 3]  cause, obtained at the time the judgment was pro-
nounced, operated to stay the execution of the judgment
pending the appeal (sec. 12113, Rev. Codes); and his ad-
mission to bail at the same time effected his release from
custody (sec. 12133). By perfecting the appeal the trial
court was deprived of jurisdiction over the judgment, and
the supreme court acquired jurisdiction; in other words,
pending the disposition of the appeal the trial court was
without authority to make any order affecting the judgment.
(*Molt* v. *Northern Pac. Ry. Co.*, 44 Mont. 471, 120 Pac. 809;
*Glavin* v. *Lane*, 29 Mont. 228, 74 Pac. 406.) The dismissal
of the appeal affirmed the judgment (sec. 12119), and when
the certificate of dismissal from this court was remitted to
the district court on May 14, the process was reversed—
this court lost jurisdiction and the district court was again
clothed with jurisdiction to do whatever ought to be done
in the premises (sec. 12132).

The question over which this controversy is waged then
[4, 5]  arises: Was the trial court authorized to suspend the
execution of the judgment before the defendant was com-
mitted to jail and upon the first opportunity which was
presented after the judgment was rendered? No authority
directly in point has been called to our attention.

In *Beggs* v. *Superior Court*, 179 Cal. 130, 175 Pac. 642,
a like inquiry was answered in the negative, but under a
statute which apparently justifies the conclusion, although

two members of the court joined in a vigorous dissenting opinion. The statute of Indiana provides expressly that the order of suspension shall be made a part of the judgment. (*State* v. *Smith,* 173 Ind. 388, 90 N. E. 607.) We do not have any statute similar to the one involved in the *Beggs Case.*

But counsel for the state insist that the question was answered by this court in *State ex rel. Reid* v. *District Court,* 68 Mont. 309, 218 Pac. 558. In that case the judgment imposed upon Held, the defendant, was that he be imprisoned in the county jail for six months and pay a fine of $500. He was duly committed and after having served eight days of the term of imprisonment the district court entered an order "that said jail sentence to the extent of five months thereof be and the same is suspended, and said punishment is reduced to the payment of a fine of $500 and the service of thirty days in the county jail." We held that the trial court was without jurisdiction to modify the judgment in the manner indicated, and that the authority to reduce punishment, conferred by section 12031, can be exercised only before the judgment is pronounced. To that extent the decision is correct beyond doubt, and those pronouncements disposed of every question presented; but the court proceeded: "Assuming that the court had the power to suspend the execution of Held's sentence and to place him upon probation, that power, too, must have been exercised at the time the sentence was pronounced. When an order suspending sentence under this section is made, it is, in effect, a part of the judgment itself. It is the court's direction as to how the judgment shall be carried into effect." Since the trial court did not assume to pursue the provisions of the suspended sentence statute, but did assume to modify the judgment itself in a material respect, it is apparent that the language quoted from the opinion is *obiter dictum;* and upon further consideration of the

subject we are satisfied that it is not a correct statement
of the law. Section 12082 contemplates clearly that the
order suspending execution is not a part of the judgment;
otherwise the words "with the order for the suspension of
the execution of sentence thereunder" are meaningless. It
is self-evident that an order suspending the execution of a
judgment cannot be made before the judgment is pronounced,
and the statute does not in terms or by implication require
that it be made contemporaneously with the pronouncement
of judgment.

Statutes of this character are designed to afford first of-
fenders an opportunity for reformation and should be construed
liberally. Every necessary precaution is taken to protect
the rights of the state and secure the interests of society.
If the person placed on probation does not conform to the
rules and regulations prescribed by the state board of prison
commissioners, he is subject to arrest and to be confined
as in the judgment directed, and the original sentence begins
only upon the first day of his actual imprisonment. (Sec.
12084.)   Since the only limitation imposed by the statute is
that the order of suspension be made before the defend-
ant is committed, this court should accept it as expressing
the legislative will that no other limitation was intended
to be imposed.

Our conclusion is that the order may be made after judg-
ment and before the defendant is committed, if the law is
observed in other respects.

But it is argued by counsel for the state that an order
suspending the execution of a judgment after the judgment
has been entered, infringes the pardoning power.

Section 9, Article VII, of our state Constitution, provides
that the governor, with the approval of the board of pardons,
may grant pardons, commutation of punishments and respites
after conviction and judgment for any offense committed
against the criminal laws of the state. If this provision

confers upon the executive branch of government the authority to suspend the execution of a judgment in a criminal case, it follows as of course that the authority cannot be exercised by the courts or by the legislature; for section 1, Article IV, of the Constitution, which apportions the powers of government among the three co-ordinate departments (executive, legislative, and judicial), provides that—"No person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or permitted."

But the provisions of the Constitution are to be construed [6] in the light of conditions as they existed at the time of its adoption (*State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589), and a history of our legislation upon the subject now under review is worthy of consideration.

The Organic Act approved May 26, 1864, by which the [7] Congress provided a government for the territory of Montana, declared that the governor of the territory should have authority to "grant pardons and respites for offenses against the laws of said territory." Notwithstanding this provision, the first legislative assembly enacted a statute which authorized a district court to suspend the execution of a judgment in any capital case, and the sheriff to suspend the execution of the judgment for a capital offense where the defendant was found to be insane, or in the event the defendant was a female and it appeared that she was pregnant. (Secs. 223, 226, 229, Criminal Practice Act, Bannack Statutes.) In 1877 the legislature enacted a statute under which a person confined in the penitentiary might by good conduct earn the right to have the term of his punishment reduced. These provisions were all continued and were in force at the time the Constitution was adopted. Section 223 was superseded by section 2278, Penal Code of

1895, which declared that an appeal to the supreme court from a judgment of conviction stays the execution of the judgment in all capital cases and in all other cases upon filing a certificate of probable cause with the clerk of the court in which the conviction was had. Section 226 was continued as section 2251, and section 229 as section 2253 of the Penal Code of 1895. Sections 2251, 2253 and 2278 of the Penal Code have been on the statute books continuously since 1895 and are now sections 12098, 12099 and 12113, respectively, of the Revised Codes of 1921. The Act of 1877 in all essential respects has been in force continuously since its adoption, and is now section 12455 of the Revised Codes. In 1913 section 12078 was enacted, which assumes to authorize a district court to suspend the execution of a judgment imposed upon a first offender, and in 1921 our new trial statute was amended to permit a trial court to stay the execution of a judgment pending the disposition of a motion for a new trial in any criminal case. (Sec. 12050, Rev. Codes.)

Thus it will be seen that from the organization of Montana as a territory to the present time—a period of sixty-one years—it has been assumed by all departments of our government, and the assumption has been acted upon, that the legislative branch of government had authority to provide for the suspension of the execution of a judgment in a criminal case, and the legislature has assumed to exercise the authority in at least three instances since the Constitution was adopted. While the contemporaneous construction of a provision of the Constitution by the other departments of the state government is not conclusive upon the courts, it is entitled to respectful consideration, upon the theory that it results from the same views of policy and modes of reasoning which prevailed among the framers of the Constitution. (*State ex rel. Haire* v. *Rice,* 33 Mont. 365, 83 Pac. 874; 12 C. J. 714.)

Furthermore, the terms "pardon," "commutation" and "respite" each had a well-understood meaning at the time our Constitution was adopted, and no one of them was intended to comprehend the suspension of the execution of a judgment as that phrase is employed in sections 12078-12086. A "pardon" is an act of grace, proceeding from the power entrusted with the execution of the laws which exempts the individual on whom it is bestowed, from the punishment the law inflicts for a crime he has committed, (*United States* v. *Wilson,* 7 Pet. 150, 8 L. Ed. 640 [see, also, Rose's U. S. Notes]); it is a remission of guilt (*State* v. *Lewis,* 111 La. 693, 35 South. 816), a forgiveness of the offense (*Cook* v. *Middlesex County,* 26 N. J. L. 326; *Ex parte Powell,* 73 Ala. 517, 49 Am. Rep. 71). "Commutation" is a remission of a part of the punishment; a substitution of a less penalty for the one originally imposed (*Lee* v. *Murphy,* 22 Gratt. (Va.) 789, 12 Am. Rep. 563; *Rich* v. *Chamberlain,* 107 Mich. 381, 65 N. W. 235). A "reprieve" or "respite" is the withholding of a sentence for an interval of time (4 Blackstone's Commentaries, 394), a postponement of execution (*Carnal* v. *People,* 1 Park. Cr. Rep. (N. Y.) 272), a temporary suspension of execution (*Butler* v. *State,* 97 Ind. 373).

Few adjudicated cases are to be found in which the validity of a statute similar to our section 12078 has been determined; but the same objections have been urged against parole statutes which vest the power of parole in persons other than those to whom the power of pardon is granted, and these statutes have been upheld quite uniformly, as a reference to the numerous cases cited in the notes to *Woods* v. *State,* 130 Tenn. 100, 169 S. W. 558, reported in L. R. A. 1915F, 531, will disclose. See, also, 20 R. C. L. 524.

It is to be kept in mind that under our suspended sentence statute the defendant is not in any true sense of the term a free man while on probation. He is in effect serv-

ing his sentence, though not within the prison walls. He earns his discharge through good conduct, as a prisoner may diminish his term by good time allowance under the provisions of sections 12455 and 12456; but the disabilities of the crime with respect to the rights of citizenship, if any, remain until removed in the manner provided by section 12263.

In further support of the views herein expressed, reference is made to *People* v. *Goodrich* (Sup.), 149 N. Y. Supp. 406; *Ex parte Bates,* 20 N. M. 542, L. R. A. 1916A, 1285, 151 Pac. 698; 16 C. J. 1334, 1335; *Parker* v. *State,* 135 Ind. 534, 23 L. R. A. 859, 35 N. E. 179; *State* v. *Fjolander,* 125 Minn. 529, 147 N. W. 273.

We conclude that the suspended sentence statute does not impinge upon the pardoning power and is a valid legislative enactment.

The motion to quash is sustained and the proceeding is dismissed.

*Dismissed.*

ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.